UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL DEWAYNE NELSON                    CIVIL ACTION

VERSUS                                    NO. 23-0375

STATE OF LOUISIANA                        SECTION "T"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing § 2254 Cases. Upon review of the entire record,[1] I have determined that a federal evidentiary hearing is unnecessary.[2] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time barred.

## I.    FACTUAL BACKGROUND

Petitioner Michael Dewayne Nelson is a probationer currently being held in the West Baton Rouge Parish Prison in Port Allen, Louisiana, on federal charges that are not the subject of this federal habeas petition.[3] Nelson was charged by a bill of information in Tangipahoa Parish with possession of a firearm or carrying a concealed weapon by a convicted felon in violation of LA.

---

[1] The State electronically filed the record at ECF No. 8.

[2] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id*. § 2254(e)(2)(B).

[3] ECF No. 3 at 1; *See* ECF No. 9, at 6; ECF No 8-1, at 80, Felony Probation Status Report, 3/6/18; *id*. at 81, Petition for Cause, 3/16/18; id at 84-84, Motion to Release Probation Hold, 5/4/18; ECF No. 8-6, at 225, Motion for Writ of Habeas Corpus Prosequendum for the Eastern District of Louisiana, 1/19/23; *id*. at 226, Order, 1/17/23.

REV. STAT. § 14:95.1, and aggravated assault with a firearm in violation of LA. REV. STAT. § 14:37.4.[4]  Nelson originally pled not guilty on December 15, 2016.[5]  On May 16, 2017, Nelson entered a no contest plea to aggravated assault with a firearm.[6]  The State *nolle prossed* the charge of possession of a firearm or carrying a concealed weapon by a convicted felon.[7]  The trial court sentenced Nelson to ten years at hard labor, but suspended the sentence and placed Nelson on a five-year period of probation.[8]  Nelson's conviction was final under federal law thirty days later, on June 15, 2017 because he did not seek reconsideration of sentence or move for leave to appeal.[9]

On March 1, 2018, Nelson was charged in the Middle District of Louisiana with conspiracy to possess with the intent to distribute cocaine, possession with the intent to distribute 500 grams or more of cocaine, and unlawful use of communication facilities.[10]  Nelson's probation officer filed a felony probation status report and a petition for cause advising that Nelson had been arrested on a federal indictment and requesting that his probation hold be maintained until such time that he was available to be moved to state court for a revocation hearing.[11]  On March 12, 2018, the state district court granted the petition for cause and issued a bench warrant, although the court stayed execution of the warrant.[12]  On July 17, 2018, the state district court lifted the probation hold, but ordered the attachment to remain.[13]  On October 2, 2019, Nelson was charged by an

---

[4] ECF No. 8-1 at 29, Bill of Information, 11/21/16.

[5] *Id.* at 21, Min. Entry, 12/15/16.

[6] *Id.* at 62-74, Guilty Plea & Sentencing Tr., 5/16/17; *id.* at 182-83, Min. Entry, 5/16/17.

[7] *Id.*; *id.* at 182-83, Min. Entry, 5/16/17.

[8] *Id.*; *id.* at 182-83, Min. Entry, 5/16/17; *id.* at 75-76, Conditions of Probation, 6/16/17.

[9] *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003) (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914).

[10] ECF No. 8-1, at 87-110, Indictment, MDLA Cr. No. 18-21-SDD-RLB, 3/1/18.

[11] *Id.* at 80, Felony Probation Status Report, 3/6/18; *id.* at 81, Petition for Cause, 3/16/18.

[12] *Id.* at 81, Order, 3/12/18; ECF No. 8-3, at 71, Min. Entry, 3/12/18.

[13] ECF No. 8-3, at 71, Min. Entry, 7/17/18.

indictment in the Middle District of Louisiana with two counts of possession with the intent to distribute methamphetamine on May 2 and 17, 2017.[14]

In the interim, on February 14, 2019, Nelson filed a counseled application for post-conviction relief asserting that his no contest plea was not knowingly, voluntarily, and intelligently entered into and that his counsel, who had no knowledge that Nelson was cooperating in an undercover capacity, was ineffective in failing to investigate the case and interview witnesses, and in counseling him about the specifics of the plea agreement.[15]  On October 6, 2020, Nelson filed a counseled supplemental application for post-conviction relief in which he claimed that Hammond Police Detective Bergeron improperly influenced him to accept the plea when Bergeron contacted him on the morning of the no contest plea and told Nelson to accept the plea offer.[16]

On January 25, 2022, the trial court held an evidentiary hearing.[17]  The parties filed post-hearing memoranda.[18]  On March 8, 2022, the trial court denied post-conviction relief.[19]  The court found that Nelson's trial counsel was not ineffective and accepting a plea agreement to probation when Nelson faced up to thirty years at hard labor as a habitual offender was in his best interest.[20] The trial court further found that no evidence supported Nelson's claim that Bergeron coerced his plea, and it found that the plea was freely, voluntarily, intelligently, and knowingly entered.[21]

On May 19, 2022, Nelson filed a counseled writ application with the Louisiana First Circuit

---

[14] *See id.* at 21-28, Order, MDLA Cr. No. 19-127, SDD-RLB, 2/28/20.

[15] ECF No. 8-1, at 132-140, Uniform Application for Post-Conviction Relief, 2/14/19.

[16] ECF No. 8-2, at 122-30, Uniform Application for Post-Conviction Relief, 10/6/20.

[17] ECF No. 8-1, at 26-27, Minute Entry, 1/25/22; ECF No. 8-4, at 24-218, Hearing Tr., 1/25/22.

[18] ECF No. 8-3, at 78-84, Michael Nelson's Memorandum in Support of Post Conviction Relief Evidentiary Hearing, 2/15/22; *id.* at 85-91, Michael Nelson's Memorandum in Support of Post Conviction Relief Evidentiary Hearing, 2/17/22; *id.* at 93-110, State's Post-Hearing Memorandum, 2/28/22.

[19] ECF No. 8-1, at 27, Minute Entry, 3/8/22; ECF No. 8-6, at 142-56, Hearing Tr., 3/8/22.

[20] ECF No. 8-6 at 151.

[21] *Id.* at 151-52.

Court of Appeal.[22]  On August 2, 2022, the Louisiana First Circuit Court of Appeal denied relief without assigning reasons.[23]

On September 6, 2022, Nelson filed a counseled writ application with the Louisiana Supreme Court.[24]  On November 8, 2022, the Louisiana Supreme Court denied the writ application, finding that Nelson failed to show that he was denied effective assistance of counsel during plea negotiations pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and he failed to satisfy his post-conviction burden of proof as to his remaining claims pursuant to La. Code Crim. Proc. art 930.2.[25]

On December 8, 2022, a motion for hearing to revoke probation was filed based on Nelson's alleged criminal activity, his failure to pay supervision fees, a fine and court costs, and the inability of the probation officer to contact Nelson at his address of record.[26]  On December 12, 2022, the state district court found probable cause that a probation violation had occurred.[27]  A revocation hearing was set for May 9, 2023,[28] but the record does not reflect whether it occurred.

## II.    **FEDERAL HABEAS PETITION**

On December 16, 2022, Nelson filed a petition for federal habeas corpus relief styled under 28 U.S.C. § 2254 and challenged his current custody.[29]  Nelson asserts the following claims:

---

[22] ECF No. 8-4 at 1-259, La. 1st Cir. Writ Application, 2022 KW 0546, 5/19/22; ECF No. 8-5 at 1-45, La. 1st Cir. Writ Application (con't), 2022 KW 0546, 5/19/22

[23] *State v. Nelson*, No. 2022 KW 0546, 2022 WL 3074584 (La. App. 1st Cir. 8/2/22); ECF No. 8-5, at 56, La. 1st Cir. Order, 2022 KW 0546, 8/2/22.

[24] ECF No. 8-5 at 59-211, La. Sup. Ct. Writ Application, 2022-KP-01340, 9/6/22; ECF No. 8-6 at 1-222, La. Sup. Ct. Writ Application (con't), 2022-KP-01340, 9/6/22.

[25] *State v. Nelson*, 349 So. 3d 561 (La. 11/8/22); ECF No. 8-6, at 240-41, La. Sup. Ct. Order, 22-KP-1340, 11/8/22.

[26] ECF No. 8-6, at 223, Detainer Notification, Affidavit of Probable Cause and Motion for Hearing to Revoke Probation, 12/8/22.

[27] *Id.* at 224, Action by the Court, 12/12/22.

[28] *See id.* at 238, District Attorney's Office Subpoena List, 4/3/23; *id.* at 239, Criminal Subpoena, 4/4/23.

[29] ECF No. 3;  *see infra* note 34.

(1)     ineffective assistance of counsel in failing to investigate the case, interview witnesses, learn of his cooperation with the police, and learn that Bergeron coerced him to enter a plea;

(2)     his no contest plea was not knowingly, intelligently and voluntarily entered;

(3)     Bergeron improperly influenced and coerced Nelson's plea.[30]

The State filed a response to Nelson's petition and asserted that: (1) the petition was not timely filed; (2) Nelson failed to exhaust claims two and three, and those claims are procedurally defaulted; (3) Nelson does not meet the custody requirement; and (4) the claims are meritless.[31]

## III.   LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996,[32] and applies to habeas petitions filed after that date.[33]  Nelson's petition is deemed filed on December 16, 2022.[34]

### A.     Subject Matter Jurisdiction

First, to be entitled to federal habeas corpus relief, a petitioner must be "in custody."[35]  The State argues that Nelson does not meet the "in custody" requirement to bring a habeas petition.

---

[30] ECF No. 3 at 5, 7-8.

[31] ECF No. 9 at 2-4, 4-6, 6, 6-11.

[32] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

[33] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).

[34] The Fifth Circuit has recognized the "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes.  *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  Nelson signed and dated his petition on December 16, 2022.  ECF No. 3, at 15.  The envelope that Nelson utilized to mail his habeas petition is stamped January 17, 2023.  *Id.* at 16.  Giving Nelson the greatest possible benefit, December 16, 2022 is considered the filing date.

[35] 28 U.S.C. § 2254(a), (b)(1).

The State claims that Nelson is not in State custody, but rather is in the custody of the United States Marshal's Service.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"[36]  As further construed by the Supreme Court, a petitioner must be "in custody" under the conviction or sentence under attack at the time his petition is filed.[37] When the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody.[38]  Prisoners on parole or probation with explicit conditions and restrictions satisfy the "in custody" requirement.[39]

Although Nelson may be in federal custody awaiting trial, he was still serving his sentence of probation for the challenged conviction at the time he filed his federal habeas application.  There is no indication in the record that he completed his sentence of probation.  In fact, he faces a revocation proceeding.  Thus, he is "in custody" for purposes of the habeas corpus statute.

For these reasons, the State's argument that Nelson is not in custody must be rejected.  This Court has subject matter jurisdiction to consider his petition.

### B.    Preliminary Considerations

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court.  In other words, has the petitioner exhausted state court remedies and is the petitioner in

---

[36] *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

[37] *Id.* at 490-91 (quoting *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S. Ct. 1556, 1560, 20 L. Ed. 2d 554 (1968)).

[38] *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

[39] *Maleng,* 490 U.S. at 491; *Clark v. Prichard*, 812 F.2d 991, 997 (5th Cir. 1987) ("[A] person on probation and subject to the conditions of probation is 'in custody' for purposes of the habeas corpus statute.").

"procedural default" on a claim.[40]  The State claims that Nelson's federal habeas petition was not

timely filed because it was not filed within one year after finality of his conviction.[41]  The State

also claims that Nelson failed to exhaust claims two and three in that he did not give the Louisiana

First Circuit and the Supreme Court a fair opportunity to adjudicate them.[42]  The State asserts that

Nelson's claims are technically procedurally barred.[43]

For the reasons that follow, the State's limitations defense is supported by the record.

Nelson's petition was not timely filed under the AEDPA, and therefore, it should be dismissed

with prejudice as time-barred.

## C.     AEDPA Statute of Limitations

The AEDPA requires that a § 2254 petition must ordinarily be filed within one year of the

date the conviction became final.[44]  Nelson's conviction was final on June 15, 2017, when he did

not file an appeal or move for reconsideration of sentence within thirty days of his sentencing.

---

[40] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[41] ECF No. 9 at 2-4.

[42] *Id. at* 4-6.

[43] *Id. at* 5-6.

[44] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Sections (d)(1)(B), (C) and (D) do not apply here.

Applying § 2244 literally, Nelson had one year from finality of his conviction, or until June 15, 2018, to file his federal habeas corpus petition.  Nelson did not file his federal habeas corpus petition within this one-year period.

Accordingly, his petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the two ways recognized in the applicable law:  statutory tolling or equitable tolling.

### 1.  Statutory Tolling

The AEDPA provides for suspension of its one-year limitations period:  "The time during which a *properly filed application for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[45]  The Supreme Court has described this provision as a tolling statute.[46]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[47]  Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one year period of limitation.[48]

---

[45] 28 U.S.C. § 2244(d)(2) (emphasis added).
[46] *Duncan*, 533 U.S. at 175-78.
[47] *Flanagan*, 154 F.3d at 199 n.1.
[48] *Id.*; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998); *Gray v. Waters*, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing.[49]   The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed *pro se* by a prisoner.[50]   I have applied that rule where necessary to Nelson's state court pleadings delineated in the procedural history.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[51]   The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[52]   A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[53]

Nelson did not file his application for post-conviction relief until February 14, 2019, nearly eight months after the federal statute of limitations expired.   As the state court record shows, Nelson had no properly filed state court application for post-conviction relief or other collateral

---

[49] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).

[50] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

[51] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

[52] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

[53] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

review pending in any court during the applicable one year period. The one-year federal limitations period continued to run uninterrupted and expired on June 15, 2018.

As Nelson's post-conviction application was filed with the state trial court on February 14, 2019, nearly eight months after the one-year federal limitations period had already expired, it therefore does not afford him any tolling benefit.[54] Simply put, once the federal limitations period expired, "[t]here was nothing to toll."[55]

Nelson's federal petition is deemed filed on December 16, 2022, under the applicable mailbox rule. This was 1645 days after the AEDPA one-year filing period expired on June 15, 2018. Accordingly, Nelson's federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

### 2. No Equitable Tolling Warranted

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in § 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing.[56] Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[57] A petitioner bears the burden of proof to establish entitlement to equitable tolling.[58]

---

[54] *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4 (E.D. La. Jul. 24, 2010) (citing *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)), *aff'd*, 253 F.3d 702 (5th Cir. 2001).

[55] *Butler*, 533 F.3d at 318.

[56] *Pace*, 544 U.S. at 418; *Jones v. Lumpkin*, 22 F.4th 486, 490 (5th Cir. Jan. 5, 2022) (citing *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).

[57] *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

[58] *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

Initially, a prisoner's *pro se* status does not constitute rare and exceptional circumstances warranting equitable tolling.[59]  In addition, the fact that Nelson has asserted ineffective assistance of trial counsel does not excuse his untimely federal filing.  The United States Supreme Court's holdings in *Martinez v. Ryan*,[60] and *Trevino v. Thaler*[61]*,* and their progeny, do not provide a basis for review of Nelson's untimely filed federal petition.  Here, the bar arises from Nelson's failure to meet the *federal* limitations deadline under the AEDPA, not any state procedural rule.  Nor do the *Martinez* and *Trevino* opinions constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA.[62]  Thus, neither *Martinez* nor *Trevino* excuses Nelson's untimely filing of his federal habeas petition.[63]

Nelson has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in this case, and I can find none.  The record does not establish any circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable

---

[59] *See, e.g., United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) ("Proceeding pro se is alone insufficient to equitably toll the AEDPA statute of limitations."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance [warranting equitable tolling] because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999) ("[N]either a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

[60] 566 U.S. 1 (2012).  In *Martinez v. Ryan*, the Court held that a state-imposed "*procedural default* will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at <u>trial</u> if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.* at 17 (emphasis added).

[61] 569 U.S. 413 (2013).  In *Trevino v. Thaler*, the Supreme Court held that *Martinez* applies where "the [state] procedural system — as a matter of its structure, design, and operation — does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal."  *Id.* at 428.

[62] *See In re Paredes*, 587 F. App'x 805, 813 5th Cir. 2014) ("the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

[63] *Moody v. Lumpkin*, 70 F.4th 884, 892 (5th Cir. 2023) (finding *Martinez* "has no applicability to the statutory limitations period prescribed by AEDPA).

tolling in this case.[64]  Nelson, therefore, is not entitled to equitable tolling of the one-year AEDPA

filing period.

### 3.      Actual Innocence

Although Nelson does not expressly argue "actual innocence" under *McQuiggin v.*

*Perkins*[65] to overcome the one-year statute of limitations imposed by the AEDPA, a petitioner can

overcome the AEDPA's one-year statute of limitations if he can establish "actual innocence."  In

*McQuiggin*, the Supreme Court held that "actual innocence, if proved, serves as a gateway through

which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case,

expiration of the statute of limitations."[66]   The Court allows this exception to prevent a

"fundamental miscarriage of justice."[67]   However, the Court cautions that "tenable actual

innocence gateways are rare:  '[A] petitioner does not meet the threshold requirement unless he

persuades the district court that, in light of the new evidence, no juror, acting reasonably, would

have voted to find him guilty beyond a reasonable doubt.'"[68]

---

[64] *See Holland v. Florida*, 560 U.S. 631, 651-54 (2010) (equitable tolling warranted when attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to respond to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to inform petitioner his state habeas petition was denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).
[65] 569 U.S. 383 (2013).
[66] *Id* at 386.
[67] *Id.* at 392.
[68] *Id.* at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Although the Supreme Court has not explicitly addressed the interplay between a guilty plea and the actual innocence exception to a procedural bar on habeas review, in *Bousley v. United States*,[69] the Court allowed a petitioner who pled guilty to assert a claim of actual innocence. Appellate courts, including the Fifth Circuit, have cited *Bousley* to support the notion that a defendant who pled guilty may still invoke the actual innocence exception to overcome a procedural default,[70] though the guilty plea "seriously undermines" that claim.[71]   Accordingly, despite his no contest plea, Nelson may rely on the actual innocence exception to seek to overcome the procedural bar.

When entering his plea, Nelson conceded under oath that he in fact committed and was guilty of the crime of which he stands convicted.   As the United States Supreme Court has explained: "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is unavailable in the vast majority of cases, claims of actual innocence are

---

[69] 523 U.S. 614, 118 S. Ct. 1604, 140 L.Ed.2d 828 (1998) (remanding the case to permit petitioner an opportunity to make a showing of actual innocence under *Schlup* standard for purposes of excusing a procedural bar to review of his guilty-plea conviction).

[70] *United States v. Hisey*, 12 F.4th 1231, 1235 (10th Cir. 2021) (citing *Bousley* for proposition that defendant who pled guilty may overcome procedural default by showing actual innocence); *United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (Wisdom, J.) (applying actual innocence to claim by defendant who pled guilty); *id.* at 914 (Dennis, J., concurring) (citing *Bousley* as first case in which the Court recognized the possibility of applying actual innocence exception to a defendant on habeas after a guilty plea).

[71] *Chestang v. Sisto*, 522 F. App'x 389, 390 (9th Cir. 2013); *Diamond v. Clarke*, No. 7:18-cv-00580, 2019 WL 4546918, at *4 (W.D. Va. Sep. 19, 2019) (finding it "even more difficult" to show actual innocence when a petitioner pled guilty); *Smith v. Warden*, No. 17-00072, 2018 WL 3130948, at *2 (W.D. Va. Jun. 26, 2018) (citations omitted); *Robinson v. Ryan*, No. 11–1383, 2012 WL 1752995 at *5 (D. Ariz. May 16, 2012) ("Where, as in this case, Petitioner pled guilty, such admission of culpability mitigates strongly against a subsequent finding of actual innocence"), *R.&R. adopted*, 2012 WL 2092089 (D. Ariz. Jun. 11, 2012).

rarely successful."[72]  In fact, "in virtually every case, the allegation of actual innocence has been summarily rejected."[73]

Here, Nelson has not met the rigorous burden of proof imposed under the actual innocence exception.  At the plea hearing, the parties stipulated that the discovery responses formed a factual basis for the plea.[74]  The discovery included a police report authored by Officer Danya Lemker indicating that she was dispatched to a residence in reference to an aggravated assault.[75]  En route, she observed a vehicle matching the suspect vehicle description and radioed for another officer to stop the vehicle.[76]  Officer Spears stopped the vehicle, detained Nelson, and located a firearm in his front left pocket.[77]  Officer Lemker proceeded to the residence and met with Warren Irving who advised that Nelson had come to the residence and an argument ensued.[78]  Irving claimed that Nelson refused to leave the residence when asked by Irving.[79]  When Irving went into the residence and closed the door, Nelson pushed it open and pulled a gun out of his left front pocket.[80]  According to Irving, Nelson told him if he ever came to his wife's house again he was going to "beat him and kill him."[81]  Irving was able to close the door with the help of his cousin.[82]

Officer Lemker went back to the traffic stop location, took Nelson into custody, and read him his *Miranda* rights.[83]  Before Lemker asked any questions, Nelson spontaneously stated,

---

[72] *Schlup*, 513 U.S. at 324.
[73] *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citation omitted).
[74] ECF No. 8-1 at 68, Plea Hearing Tr., 5/16/17.
[75] *Id.* at 44, Hammond Police Department Report, 9/12/16.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] *Id.*

"whatever that man said happened."[84]  Lemker transported Nelson to the Hammond City jail, and gave him a copy of his written *Miranda* rights.[85]  Thereafter, Nelson claimed that he never pulled a gun out of his pocket and that he just told Irving if he ever came to his house and put his hands on his wife again that he was going to beat and kill him.[86]  Nelson was booked for aggravated assault and being a felon in possession of a firearm.[87]

The body camera footage of two officers who conducted the traffic stop was included in discovery.[88]  The body camera footage captured Nelson admitting that he threatened to kill the victim and his motive, as well as his confession to the aggravated assault with a firearm and to possessing a firearm.[89]

The discovery also included a voluntary statement written by Syntoria Cooper, in which she wrote that Irving went outside to talk to Nelson and they began arguing.[90]  Cooper explained that Irving went inside the house and asked Nelson to leave.[91]  When Irving shut the door, Nelson attempted to open it.[92]  Cooper looked out the window and saw a gun in Nelson's hand.[93]  Nelson continued to demand Irving come outside, but Irving told him that he was not going to disrespect his aunt's house and to meet him in thirty minutes.[94]  Nelson told Irving to come outside and "they

---

[84] *Id.*

[85] *Id.*

[86] *Id.*

[87] *Id.* at 45.

[88] *See id.* at 60, Supplemental Response to Discovery Motions, 2/21/17; ECF No. 8-3, at 93, State's Post-Hearing Memorandum, 2/28/22.

[89] ECF No. 8-6, at 148, 150, Hearing Tr., 3/8/22; *see* ECF 8-3, at 98-99, 102-03, State's Post-Hearing Memorandum, 2/28/22.

[90] ECF No. 8-1, at 50, Voluntary Statement of Syntoria Cooper, 9/12/16.

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

can do it at the road."[95]   Cooper went outside and told him (Irving) to leave.[96]

According to a voluntary statement written by Irving included in the discovery, he went outside on the porch of his aunt's daycare to speak to Nelson.[97]   Irving told Nelson to "see [him] in the street," and attempted to shut the door.[98]   Nelson began to push on the door so Cooper helped Irving close it.[99]   Irving saw Nelson pull a gun out of his left pocket.[100]   Irving called the police.[101]

According to the affidavit of Officer Danya Lemker in support of the arrest warrant, during a traffic stop conducted on a vehicle that matched the description of a suspect vehicle from an aggravated assault, Nelson produced a firearm from his left pocket.[102]   Officer Lemker also reported that Nelson produced a firearm during a verbal altercation with Warren Irving, and told him that he was going to beat and kill him.[103]

As evidence of his actual innocence, Nelson submitted a number of affidavits with his application for post-conviction relief.   Debra Michelli, in her affidavit dated November 3, 2018, stated that, on September 12, 2016, Nelson and Warren Irving were involved in a disagreement at her home.[104]   Michelli claimed that she witnessed the incident, but that she did not see any physical contact between the men, nor did she see any firearms or weapons present at the scene.[105]   She further claimed that she did not hear any threats by either man.[106]

---

[95] *Id.*
[96] *Id.*
[97] *Id.* at 51, Voluntary Statement of Warren Irving, Sr., 9/12/16.
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] *Id.* at 42, Affidavit in Support of Arrest Warrant (violation LA. REV. STAT. § 14:95.1), 9/12/16.
[103] *Id.* at 43, Affidavit in Support of Arrest Warrant (violation LA. REV. STAT. § 14:37), 9/12/16.
[104] ECF No. 8-6, at 132, Affidavit of Debra Michelli, 11/3/18.
[105] *Id.*
[106] *Id.*

Contrary to his prior written voluntary statement of September 12, 2016, Warren Irving stated in his November 3, 2018 affidavit that he was involved in an incident with Nelson, but that there was no physical contact, no firearms or other weapons were present at the scene, and no threats were made by either man.[107]

Syntoria Cooper similarly stated in her November 26, 2018 affidavit that she witnessed the incident between Nelson and Irving, but that there was no physical contact between the men, she did not see a firearm or other weapon, and that she did not hear any threats.[108]

Brandi Thomas, the owner of the vehicle Nelson was driving, stated in her November 26, 2018 affidavit that the gun located in the vehicle belonged to her, and that Nelson had no knowledge that the gun was in the vehicle.[109]

At the evidentiary hearing related to Nelson's application for post-conviction relief, Nelson presented the testimony of his former attorney, Albert Bensabat, and Debra Michelli.[110] Bensabat testified that Nelson told him that he was called to the residence because Irving attacked Nelson's significant other, who was nine months pregnant at the time, because she would not bail him out of jail.[111] Bensabat testified that Nelson did not admit that he went to the residence with a gun.[112] According to Bensabat, Nelson told him the firearm was in the glove compartment of the vehicle he was driving,[113] and it belonged to his girlfriend.[114]

---

[107] *Id.* at 134, Affidavit of Warren Bernard Irving, 11/3/18.

[108] *Id.* at 138, Affidavit of Syntoria Cooper, 11/26/18.

[109] *Id.* at 136, Affidavit of Brandi Thomas, 11/26/18.

[110] ECF No. 8-4, at 89-128, 142-195, Post-Conviction Hearing Tr., 1/25/22.  Nelson also presented the testimony of Chief Bergeron, Jennie Newell Perkins, Esq., and Roshanda Johnson, however, their testimony did not relate to whether Nelson actually committed the crime of which he was convicted.  *See id.* at 41-89, 128-142.

[111] *Id.* at 105-08.

[112] *Id.* at 108.

[113] *Id.*at 107.

[114] *Id.; see also id.* at 121-22.

Debra Michelli testified that she runs a daycare out of her home and cares for six kids.[115] On September 12, 2016, Michelli, her nephew Warren Irving, and her niece Syntoria Cooper were present at the home.[116]  Her daughter Brandi Thomas was not present at the house.[117]  Michelli testified that Nelson came to the door and asked for Irving.[118]  Michelli recalled that Irving and Nelson had an argument on the porch.[119]  According to Michelli, Irving told her that Nelson wanted to fight, and Michelli told Nelson and Irving to take the matter someplace else.[120]  Michelli brought the children to the back of the house because she did not want them near the argument.[121]  Michelli remained in the back of the house five to seven minutes.[122]  Michelli claimed that when she returned to the front of the house to see if Nelson had left, Irving and Nelson were still having a confrontation, and Irving had called the police.[123]  Michelli claimed that Nelson said he was going to slap Irving, but that she did not see any weapons or a gun.[124]  Michelli testified that she could not hear Nelson and Irving from her position inside the house, and that she did not know what the argument was about, but that she did not hear Nelson threaten to kill Irving.[125]  Michelli explained that the police came to her house, but that they did not interview her.[126]

Initially, the recantations of Cooper and Irving certainly are new.  However, the actual innocence exception requires that the proffered evidence not only be new, but that it also be

---

[115] *Id.* at 143, 151.
[116] *Id.* at 143-44.
[117] *Id.* at 145.
[118] *Id.* at 143-44, 152, 157-58.
[119] *Id.* at 143.
[120] *Id.*
[121] *Id.* at 143-44, 153, 158.
[122] *Id.* at 154.
[123] *Id.* at 143, 155.
[124] *Id.* at 145-147, 159.
[125] *Id.* at 147, 156.
[126] *Id.* at 147.

reliable.[127]   In assessing reliability, it is appropriate for a court to "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability" of the proffered new evidence.[128]   Those factors weigh against Nelson in this case.

The recanting affidavits of Cooper and Irving as well as the affidavits by Brandi Thomas and Debra Michelli are highly suspicious.  The statements in the affidavits of Cooper and Irving, more than two years after the incident, contradict their handwritten statements made on the day of the incident.  Further, as noted by the state district court, Irving stated during the 911 call that Nelson threatened him with a gun.[129]   The Fifth Circuit instructs federal habeas courts to view a recanting affidavit with "extreme suspicion" when the affidavit "stands alone, uncorroborated, and unsupported."[130]   Additionally, Cooper and Irving have been friends (or at least acquaintances) with Nelson since before the time of the crime.  Thomas, the cousin of Cooper and Irving, was Nelson's girlfriend at the time of the incident and has a child with him.  Michelli is Thomas's mother and the grandmother of the child Thomas and Nelson share.  Nelson's preexisting relationship with the affiants render the affidavits inherently suspect.[131]

While Bensabat's testimony, which is also new evidence, supports Nelson's claim of actual innocence, Bensabat was not present at the time of the incident.  He merely testified regarding what his client Nelson told him.  Nelson's statements to Bensabat, however, contradict his statements captured by the police body cameras.  Thus, Bensabat's testimony is not reliable.

---

[127] *House v. Bell*, 547 U.S. 518, 537 (2006) ("[T]o be credible a gateway [actual innocence] claim requires new reliable evidence....").

[128] *Schlup*, 513 U.S. at 332.

[129] ECF No. 8-6, at 151, Hearing Tr., 3/8/22.

[130] *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005).

[131] *See, e.g.*, *Milton v. Secretary, Department of Corrections*, 347 F. App'x 528, 531 (11th Cir. 2009) (finding the reliability of petitioner's affidavits suspect because they were executed by friends or fellow inmates)

While Michelli testified at the post-conviction hearing, more than five years after the incident, that she did not see a firearm and did not hear Nelson threaten Irving, that testimony is also not reliable. As noted by the state district court, Michelli admitted that she did not see the entire encounter between Nelson and Irving.[132] Rather, Michelli testified that she could not hear what was being said during the argument, and, further, admitted that she was in the back of the house for five to seven minutes while the argument between Nelson and Irving continued on the front porch.[133]

Finally, all of the foregoing new evidence is not sufficient, when considered in light of the discovery coupled with the evidence presented by the State at the post-conviction hearing to show that no reasonable juror would have convicted Nelson. In its case, the State presented the audio of the 911 call.[134] It also presented of testimony of Lemker, who worked for the Hammond Police Department at the time of the incident and responded to the home with her field training officer, Matt Schenk.[135] Lemker recalled that she completed an affidavit for Nelson's arrest and the police report.[136] Lemker arrested Nelson, read him his *Miranda* rights, and witnessed Nelson sign a waiver of rights form.[137] Lemker recalled that she spoke with Nelson and that she included in the police report the statements he made, although she did not recall the details of the conversation.[138] According to the police report, which was admitted into evidence,[139] Nelson stated "whatever that

---

[132] ECF No. 8-6, at 150, Hearing Tr., 3/8/22.

[133] ECF No. 8-4, at 147, 154, 156, Post-Conviction Hearing Tr., 1/25/22.

[134] *Id.* at 160-62. While the transcript of the 911 call is not part of the state court record, the state district court found that Irving reported on the 911 call that he had been threatened with a gun. ECF No. 8-6, at 151, Hearing Tr., 3/8/22. *See* ECF No. 8-1, at 104, State's Post-Hearing Memorandum, 2/28/22 (arguing that Irving identified Nelson and claimed that he threatened him with a firearm).

[135] *Id.* at 163.

[136] *Id.* at 164-69.

[137] *Id.* at 169-71.

[138] *Id.* at 170.

[139] *See id.* at 168.

man said happened," but, after he was transported to the jail, Nelson claimed that he never pulled a gun out of his pocket and "he just told Irving that if he ever came to his house, and put his hands on his wife again cousin or not that he was going to beat him and kill him."[140]

Officer Ryan Ray of the Hammond Police Department testified that he responded to the scene on September 12, 2016.[141]  He had Syntoria Cooper and Warren Irving complete written statements, which Ray signed.[142]

Trooper Javon Spears, who was part of the Hammond Police Department on September 12, 2016, testified that he conducted a traffic stop involving Nelson.[143]  Spears recalled that, as he approached the vehicle, Nelson pulled a firearm out of his left pocket.[144]  Spears yelled at Nelson, and Nelson threw the firearm into the back seat of the vehicle.[145]  Spears pulled Nelson out of the car and placed him under arrest.[146]  The body camera footage from the body cameras that Spears and another officer were wearing was entered into evidence.[147]  Spears testified that he recovered the firearm from the backseat of the vehicle.[148]  The body camera footage showed that there were live rounds in the magazine.[149]  Significantly, the footage also included an admission by Nelson that he possessed the firearm and his confession that he threatened to kill Irving due to an interpersonal dispute.[150]

---

[140] ECF No. 8-1, at 44, Hammond Police Department Report, 9/12/16.
[141] ECF No. 8-4, at 174, 177, Post-Conviction Hearing Tr., 1/25/22.
[142] *Id.* at 175-77.
[143] *Id.* at 180-82.
[144] *Id.* at 182-83.
[145] *Id.*
[146] *Id.* at 183.
[147] *Id.* at 184-87.
[148] *Id.* at 186.
[149] *Id.* at 187.
[150] *See* ECF No. 8-6, at 148, 150, Hearing Tr., 3/8/22; ECF No. 8-3 at 98-99, 102-03, 106, State's Post-Hearing Memorandum, 2/28/22.

After considering the new evidence presented by Nelson in context with the evidence presented by the State, Nelson has not provided evidence sufficiently reliable and persuasive enough to satisfy *Schlup*'s actual innocence gateway standard.

Nelson has asserted no other excuse to avoid the expiration of the AEDPA limitations period. His federal petition, deemed filed December 16, 2022, was not timely filed and must be dismissed with prejudice for that reason.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Michael Nelson's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[151]

New Orleans, Louisiana, this 1st day of August, 2023.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[151] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).